UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 13-60068-CR-COHN/SELTZER

UNITED STATES OF AMERICA,

      Plaintiff,

v.

DAVID MCLEAN,

      Defendant.

_____/

## ORDER DENYING DEFENDANT'S MOTION FOR NEW TRIAL AND GRANTING DEFENDANT'S RENEWED MOTION FOR JUDGMENT OF ACQUITTAL

**THIS CAUSE** is before the Court upon Defendant's Motion for New Trial [DE 70] ("Motion for New Trial") and Defendant's Renewed Motion for Judgment of Acquittal [DE 71] ("Motion for Acquittal," together with the Motion for New Trial, the "Motions"). The Court has considered the Motions, the Government's Opposition [DE 74], and Defendant's Reply [DE 77], and is otherwise advised in the premises. As discussed more fully herein, the Court will grant Defendant's Motion for Acquittal, and will deny Defendant's Motion for New Trial as moot.

## I.   BACKGROUND

On August 15, 2013, Defendant was indicted on three counts of bribery under 18 U.S.C. § 666 in connection with the business of the City of Margate ("Margate") and its subsidiary agency, the Margate Community Redevelopment Agency ("MCRA"). See DE 27 ("Superseding Indictment"). At all relevant times, Defendant served as a commissioner of Margate and a board member of the MCRA. See id. at 2; DE 52 at 8; DE 71-1 at 10:10–12. Counts Two and Three of the Superseding Indictment—the

counts at issue in Defendant's Motions—charged Defendant with accepting $5,000 in bribes "in connection with . . . a series of transactions of Margate involving . . . a $25,000 MCRA construction grant."  DE 27 at 6–7.  Count Two of the Superseding Indictment specifically charged Defendant with accepting a bribe of approximately $3,000 on or about November 2, 2012.  Id. at 6.  Count Three of the Superseding Indictment charged Defendant with accepting a bribe of approximately $2,000 on or about January 30, 2013.  Id. at 7.  The Superseding Indictment also alleged that "[i]n each of the fiscal years 2011, 2012 and 2013, Margate received direct benefits well in excess of $10,000 under federal programs."  Id. at 2.

Trial in this action commenced on September 16, 2013.  See DE 44.  During the charge conference, the parties proposed and agreed to jury instructions modifying slightly the allegations of the Superseding Indictment.  See Trial Tr. 5:6–7:15, Sept. 23, 2013.  Instead of determining whether Margate received over $10,000 in benefits under federal programs each fiscal year, the instructions required the jury to find, with regard to Count Two, whether "the [MCRA] received benefits in excess of $10,000 under a Federal program involving some form of Federal assistance" during the "one-year period from December 1, 2011, to December 1, 2012."  DE 68 at 9.  With regard to Count Three, the instructions directed the jury to find whether "the [MCRA] received benefits in excess of $10,000 under a Federal program involving some form of Federal assistance" during the "one-year period from February 1, 2012, to February 1, 2013." Id.  On September 24, 2013, the jury returned a verdict finding Defendant not guilty on Count One of the Superseding Indictment, but guilty on Counts Two and Three.  DE 57.

Defendant now moves for a new trial or a judgment of acquittal with regard to Counts Two and Three.  The thrust of Defendant's argument in both Motions is that the Government failed to make the required showing under 18 U.S.C. § 666(b) that the MCRA received $10,000 in federal benefits during the time periods at issue.  See DE 70 & 71.[1]  The Government opposes the Motions, arguing that the evidence at trial established that both Margate and the MCRA received federal benefits to satisfy section 666(b).  DE 74.[2]

## II.   DISCUSSION

### A.  Legal Standard

Pursuant to Rule 29 of the Federal Rules of Criminal Procedure, the Court may enter a judgment of acquittal notwithstanding a guilty verdict.  Fed. R. Crim. P. 29(c)(2).  "A motion for judgment of acquittal is a direct challenge to the sufficiency of the evidence presented against the defendant."  United States v. Aibejeris, 28 F.3d 97, 98 (11th Cir. 1994) (per curiam).  When faced with a Rule 29 motion, the Court should "determine whether, viewing all the evidence in the light most favorable to the

---

[1] In the Motion for New Trial, Defendant also takes issue with the Court's response to a question by the jury.  DE 70 at 8–9.  The jury posed the following question during deliberations: "[I]f a governmental agency receives funds 'indirectly' via another governmental agency, is the ultimate recipient of the funds subject to [18 U.S.C. § 666]?"  DE 58.  The Court responded "Yes" to this question.  Id.  As discussed more fully herein, the Court's answer was a correct statement of the law, and does not provide a basis for granting a new trial.  See United States v. Lopez, 590 F.3d 1238, 1247–48 (11th Cir. 2009).

[2] Defendant has moved to strike the Government's opposition papers as untimely.  See DE 76.  The Court has broad discretion in resolving a motion to strike, see, e.g., Galactic Towing, Inc. v. City of Miami Beach, 341 F.3d 1249, 1253 (11th Cir. 2003) (per curiam), and will dispose of a controversy on its merits where possible.  In light of the lack of prejudice to Defendant resulting from the Government's brief delay in responding to the Motions, the Court will deny Defendant's motion to strike the Government's opposition.

Government and drawing all reasonable inferences and credibility choices in favor of the jury's verdict, a reasonable trier of fact could find that the evidence established guilt beyond a reasonable doubt."  United States v. Grigsby, 111 F.3d 806, 833 (11th Cir. 1997) (quoting United States v. O'Keefe, 825 F.2d 314, 319 (11th Cir. 1987)).

Rule 33 of the Federal Rules of Criminal Procedure provides that the Court "may vacate any judgment and grant a new trial if the interest of justice so requires."  Fed. R. Crim. P. 33(a).  The Court has broad discretion in determining whether the grant of a new trial is appropriate.  United States v. Vicaria, 12 F.3d 195, 198 (11th Cir. 1994). Still, the Court may not "reweigh the evidence and set aside the verdict simply because it feels some other result would be more reasonable.  The evidence must preponderate heavily against the verdict, such that it would be a miscarriage of justice to let the verdict stand."  Butcher v. United States, 368 F.3d 1290, 1297 (11th Cir. 2004) (internal quotation marks omitted).

**B. Analysis**

Defendant attacks the jury's verdict on Counts Two and Three on the ground that the Government failed to satisfy the requirement of 18 U.S.C. § 666(b) that the agency whose affairs are touched by bribery benefit under a federal program.  Defendant contends that the MCRA's indirect receipt of federal benefits could not satisfy section 666(b), and moreover the Government did not prove that the MCRA received such benefits even indirectly.  The Court agrees with the Government that the MCRA's indirect receipt of federal benefits could satisfy section 666(b).  Nevertheless, the evidence at trial was insufficient to sustain a finding that the MCRA directly or indirectly received federal benefits during the time periods alleged.  The evidence therefore

cannot support Defendant's conviction on Counts Two and Three, and a judgment of acquittal on these counts is appropriate.

### 1.  The Language of 18 U.S.C. § 666

As relevant here, 18 U.S.C. § 666 criminalizes "bribery concerning programs receiving Federal funds."  Under section 666(a)(1)(B), an individual who is the "agent of an organization, or of a State, local, or Indian tribal government, or any agency thereof," may not "corruptly . . . accept[] . . . anything of value . . . intending to be influenced or rewarded in connection with any business, transaction, or series of transactions of such organization, government, or agency involving any thing of value of $5,000 or more." 18 U.S.C. § 666(a)(1)(B).  A conviction under the statute also requires that the "organization, government, or agency" whose affairs are implicated by the bribery "receive[], in any one year period, benefits in excess of $10,000 under a Federal program involving a . . . form of Federal assistance."  18 U.S.C. § 666(b).

### 2.  The MCRA's Indirect Receipt of Federal Benefits Could Satisfy 18 U.S.C. § 666(b)

Defendant contends that section 666(b) could only be satisfied in this case if the MCRA directly received money from the federal government, and that the indirect receipt of federal benefits through intermediate sources should not suffice.  DE 71 at 9–10, 12 (citing United States v. Wyncoop, 11 F.3d 119, 120–23 (9th Cir. 1993)). The Court does not read section 666(b) so narrowly.  The statute contains no language requiring direct receipt of federal funds, and rather demands that the government or agency implicated in some manner "receive[] . . . benefits in excess of $10,000 under a Federal program."  18 U.S.C. § 666(b).  Other courts considering the statute have also rejected such restrictive readings, and have found the federal benefits requirement

satisfied where the organization, government, or agency whose affairs were touched by bribery received the requisite federal benefits indirectly.  See United States v. Dubon-Otero, 292 F.3d 1, 7–10 (1st Cir. 2002) (affirming section 666 convictions where sub-grantee received funds to implement federal programs via intermediary); United States v. Mezzatesta, No. 06-56, 2007 U.S. Dist. LEXIS 30192, at *2–4 (N.D. W. Va. Apr. 23, 2007) (holding section 666(b) could be satisfied where local school boards received funds for school lunch programs from state, which in turn received school lunch program funds from federal government); United States v. Dransfield, 913 F. Supp. 702, 707–10 (E.D.N.Y. 1996) (holding section 666(b) could be satisfied where agency implementing federal noise-abatement grants received funds through intermediate delegating agency).

Wyncoop, the case upon which Defendant relies to argue that the indirect receipt of federal benefits cannot support a section 666 conviction, illustrates that agencies receiving only incidental benefits arising from federal programs should not satisfy section 666(b).  See 11 F.3d at 120–23 (rejecting that private college was beneficiary under federal program for purposes of section 666(b) where college benefitted incidentally from its students' receipt of federally guaranteed loans).  This Court does not take issue with Wyncoop's admonition that the reach of section 666(b) has limits with regard to who may be considered a "beneficiary" under a federal program.  Indeed, the Supreme Court articulated such limits in Fischer v. United States, 529 U.S. 667 (2000), holding with respect to section 666(b):

> Any receipt of federal funds can, at some level of generality, be characterized as a benefit. The statute does not employ this broad, almost limitless use of the term. Doing so would turn almost every act of fraud or bribery into a federal offense, upsetting the proper federal balance. To

6

determine whether an organization participating in a federal assistance program receives "benefits," an examination must be undertaken of the program's structure, operation, and purpose. The inquiry should examine the conditions under which the organization receives the federal payments. The answer could depend, as it does here, on whether the recipient's own operations are one of the reasons for maintaining the program.

Id. at 681.

Consistent with Fischer, a recipient of federal benefits passed on by an intermediary may satisfy section 666(b) where the indirect recipient's operations have a sufficient nexus with the federal program from which the benefits arise.  For example, in United States v. Dubon-Otero, 292 F.3d 1, 8–10 (1st Cir. 2002), the First Circuit held that the sub-grantee of an organization receiving federal funds could be a beneficiary under section 666(b), because the sub-grantee's work was related to the federal programs under which the grants were provided.  Similarly, in United States v. Mezzatesta, No. 06-56, 2007 U.S. Dist. LEXIS 30192, at *2–4 (N.D. W. Va. Apr. 23, 2007), the court held that school boards receiving lunch program and special education funds distributed by the state could be beneficiaries under federal programs that provided such funds to the state, because the implementation of the programs by the school boards was within the contemplation of the related federal programs.  It follows that the MCRA could also satisfy section 666(b) by virtue of benefits it received via intermediaries such as Margate or Broward County if its operations had a sufficient nexus to a federal program under which the benefits originated.

On the other hand, the Government overstates its case by suggesting that, because Margate received federal funds, the MCRA also necessarily benefitted under the federal programs providing the funds.  See DE 74 at 6–12.  Section 666(b) requires that the "organization, government, or agency" whose affairs are touched by bribery

receive over $10,000 in benefits under a federal program for the statute to apply.  It is true that the Government need not trace identifiable federal dollars from the federal government through a local government to its subsidiary agencies for those agencies to satisfy section 666(b).  See United States v. Roberts, 28 F. Supp. 2d 741, 746–47 (E.D.N.Y. 1998) (rejecting argument that government must trace identifiable federal funds to beneficiary); see also Sabri v. United States, 541 U.S. 600, 606 (2004) (discussing fungible nature of money in holding that no link need be proved between federal benefits and transaction that is subject of bribery).  Nevertheless, 18 U.S.C. § 666 refers separately to "organization[s]," "government[s]," and "agenc[ies]," and defines a "government agency" as a legal entity distinct from its parent "government." See 18 U.S.C. § 666(d)(2).  A reading of the plain language of the statute thus suggests that "governments" and "agencies" are not coextensive; lumping the two types of entities together as unitary actors would do violence to a statute which takes pains to distinguish among them.  The Court thus interprets section 666(b) as requiring the "government" or "agency" whose affairs are touched by bribery to receive the necessary federal benefits itself; receipt of federal benefits by a government is insufficient, standing alone, to render its subsidiary agency a section 666(b) "beneficiary."  Although an agency such as the MCRA may doubtless receive federal benefits indirectly through its parent government, such a finding should be supported by a nexus between the agency's operations and the federal program under which the benefits are provided, as discussed supra pp. 6–7.

Moreover, the precedent upon which the Government relies does not support its contention that any federal benefits received by a government should be automatically

attributed to its subsidiary agencies.  In United States v. Grossi, 143 F.3d 348 (7th Cir. 1998), United States v. Coyne, 4 F.3d 100 (2d Cir. 1993), and United States v. Simas, 937 F.2d 459 (9th Cir. 1991) (see DE 74 at 6–10), the courts held that a government or agency's section 666(b) benefits need not be earmarked for the specific program or activity implicated by bribery.  These holdings comport with the text of 18 U.S.C. § 666(b), which requires that the relevant "government[] or agency" receive federal benefits, but does not demand that the federal benefits relate to the recipient's specific programs or activities touched by bribery.  In United States v. Delano, 55 F.3d 720 (2d Cir. 1995) (see DE 74 at 13), the Second Circuit did not directly address the requirements of section 666(b), but instead determined whether the trial court's jury instructions constituted a constructive amendment of the indictment or fatal variance in the evidence.  Finally, in United States v. Moeller, 987 F.2d 1134 (5th Cir. 1993) (see DE 74 at 8), the Fifth Circuit addressed whether agents of a subsidiary agency could be indicted also as agents of the parent agency, but did not consider whether funds received by the parent could be attributed to the subsidiary when the jury was specifically charged with determining whether the subsidiary received the section 666(b) federal benefits, as was the case here (see DE 68 at 9).  In short, the cases upon which the Government relies do not support its contention that Margate's receipt of federal benefits may be automatically attributed to the MCRA by virtue of the MCRA's subsidiary relationship to Margate.

Therefore, because an agency's indirect receipt of federal benefits may satisfy section 666(b), the MCRA's indirect receipt of federal benefits could support Defendant's convictions on Counts Two and Three.  Nevertheless, the Government was

required to prove the MCRA's receipt of federal benefits with competent evidence, and could not merely rely on federal benefits provided to Margate.  The Court therefore turns to whether the Government adduced sufficient evidence at trial to meet its burden of proving the MCRA benefitted under a federal program.

### 3.  The Evidence Was Insufficient to Prove that the MCRA Received the Necessary Benefits

Defendant argues that the Government did not prove that the MCRA received any benefits under a federal program, or that the MCRA benefitted within the necessary timeframe, thus his section 666 convictions must be overturned.  The Court finds that the Government adduced sufficient evidence at trial to support a finding that the MCRA received benefits under a federal program.  Nevertheless, the evidence was insufficient to establish that those benefits were received within the necessary timeframe with regard to either Count Two or Count Three, thus acquittal is required on both counts.

Defendant challenges only the sufficiency of the evidence on Counts Two and Three with regard to whether the MCRA received in excess of $10,000 in benefits under a federal program in a relevant one-year period.  DE 71 at 8–15.  Defendant argues that the absence of receipts or accounting records showing a transfer of federal funds or other benefits to the MCRA precludes a finding that section 666(b) has been satisfied. DE 71 at 12–15.  Defendant cites to United States v. Jackson, 313 F.3d 231 (5th Cir. 2002), for the proposition that section 666(b) requires such a showing.  In Jackson, the Fifth Circuit held the evidence insufficient to support a bribery conviction under section 666.  313 F.3d at 236–38.  Because section 666(b) requires the receipt of $10,000 in federal benefits during a one-year period in which the bribery occurred, evidence that the city implicated by bribery in Jackson received federal funds within a

broader timeframe than the one-year periods charged was insufficient to support a

conviction.  Id. at 235–36.  The Fifth Circuit also held that a series of payments to the

city in two years for just over $10,000 each year were insufficient to satisfy

section 666(b), because the payments contained mixed federal and state funds.  Id.

at 237–38.  The jury would have had to conclude that the payments were almost entirely

federal in character each year to find that the $10,000 prerequisite of section 666(b)

was satisfied, and the evidence did not support such a conclusion.  Id.  A review of

Jackson illustrates that the evidence of the alleged federal benefits in that case failed as

equivocal, however the case did not state a rule that federal benefits under

section 666(b) must be proved by receipts and other documentary evidence.

Nevertheless, Jackson's broader lesson that the elements set forth in 18 U.S.C. § 666—

including the receipt of $10,000 in federal benefits during a relevant time period under

section 666(b)—must be proved beyond a reasonable doubt and may not be satisfied

by speculation is well-taken.

Here, Dennis Holtse, former Assistant Director of the MCRA, testified that

Broward County built six bus shelters "for" the MCRA to supplement the MCRA's

existing "eight or nine" shelters, representing a value of approximately $240,000.

DE 71-3 at 8:2–19.  Mr. Holtse testified that the bus shelters were completed in the

calendar year of 2012, and that "[f]ederal stimulus dollars were used for the bus

shelters."  Id. at 23:14.  The MCRA then assumed responsibility for maintaining the bus

shelters.  Id. at 8:16–17.  This evidence that the MCRA received and maintained bus

shelters paid for with federal stimulus funds could support an inference that the MCRA

received benefits under a federal stimulus program.

However, with regard to Count Two, the Government was required to prove that the MCRA received over $10,000 in federal benefits "during the one-year period from December 1, 2011, to December 1, 2012." DE 68 at 9.[3] Mr. Holtse did not specify when in 2012 the shelters were provided to the MCRA. The shelters could have been provided to the MCRA in December just as easily as they could have been provided in July; a conclusion that the shelters were received during 2012, but before December 1, would necessarily rest upon speculation instead of evidence adduced at trial. Mr. Holtse's testimony regarding the bus shelters was therefore insufficient to establish that the MCRA received federal benefits within the necessary timeframe to support a guilty verdict on Count Two.

Similarly, Mr. Holtse's testimony that the MCRA received shelters in 2012 was insufficient to prove a receipt of federal benefits "during the one-year period from February 1, 2012, to February 1, 2013," which was required to sustain a conviction on Count Three. See DE 68 at 9. A finding that this element was satisfied would again necessarily rest upon speculation that the shelters were not received in January 2012. The Court therefore concludes that a reasonable trier of fact could not find that Mr.

---

[3] 18 U.S.C. § 666(b) only requires that the "organization, government, or agency" at issue "receive[], in any one year period, benefits in excess of $10,000." Theoretically, a conviction under section 666 could stand if the MCRA had received the requisite federal benefits in any one-year period within a year before or after the alleged bribery taking place on November 2, 2012. See id. § 666(d)(5). Nevertheless, having proposed the instruction directing the jury to consider only the period from December 1, 2011, to December 1, 2012, to determine whether the MCRA received the requisite federal benefits (see DE 33 at 7), the Government was bound to make a showing to satisfy the elements of the offense as instructed. See United States v. Murillo, 443 F. App'x 472, 474 (11th Cir. 2011) (per curiam); United States v. Spletzer, 535 F.2d 950, 954 (5th Cir. 1976); AlphaMed Pharm. Corp. v. Arriva Pharm., Inc., 432 F. Supp. 2d 1319, 1354–55 & n.53 (S.D. Fla. 2006), aff'd, 294 F. App'x 501 (11th Cir. 2008) (per curiam).

Holtse's testimony regarding the MCRA's receipt of the bus shelters established beyond a reasonable doubt that the MCRA received federal benefits during the relevant time periods.

Nor does the remaining evidence clarify when the bus shelters were given to the MCRA. An MCRA budget introduced at trial illustrates that the MCRA allocated $100,000 in "Capital Outlay" relating to "Bus Shelters" in Fiscal Year 2013, which commenced on October 1, 2012. Gov't Ex. 8 ("2013 Budget") at 2. The portion of the 2013 Budget relating to "Other CRA Property" also allocates $34,500 for "Painting of Bus Shelters" and "Bus Shelter Maintenance." Id. at 5. These various references to "Bus Shelters" buttress Mr. Holtse's testimony that the MCRA owned and maintained a number of bus shelters, but do not speak to when the MCRA received federally funded shelters from Broward County.

The evidence also fails to support a finding that the MCRA received federal benefits other than the bus shelters. The only evidence of other federal benefits received by the MCRA was Mr. Holtse's testimony that the MCRA received federal funds in connection with a State Road 7 landscaping project. DE 71-3 at 7:22–8:1. On cross examination, however, Mr. Holtse admitted that he did not actually know whether any federal funds were involved in the project. Id. at 22:17. Nor did Mr. Holtse testify that MCRA's work on the project implemented any federal program. In short, there is a near-total absence of evidence that the MCRA received any federal benefits aside from the bus shelters.

The Government has therefore failed to adduce enough evidence at trial to support a conviction on either Count Two or Three. The Government has not provided

evidence sufficient for a jury to conclude that the MCRA received bus shelters under a federal stimulus program within the time period relevant to each count.  Nor did the Government prove the MCRA's receipt of any other federal benefits.  Given this dearth of probative evidence to satisfy section 666(b) with respect to Counts Two and Three, the Court concludes that no reasonable trier of fact could find that the evidence established Defendant's guilt beyond a reasonable doubt.  A judgment of acquittal is therefore warranted on Counts Two and Three.  See Grigsby, 111 F.3d at 833.

### III.  CONCLUSION

In sum, the Government has failed to present sufficient evidence to establish the elements of the offenses charged in Counts Two and Three of the Superseding Indictment, even viewing the record in the light most favorable to the Government.  The Court will accordingly grant Defendant's Motion for Acquittal, and will deny the Motion for New Trial as moot.  In accordance with Rule 29(d) of the Federal Rules of Criminal Procedure, the Court also determines that a motion for a new trial should not be granted if the Court's judgment of acquittal is later vacated or reversed.  The Court arrives at this determination after considering the trial record and finding that the evidence—apart from those deficiencies identified as a basis for the Court's grant of the Motion for Acquittal—does not preponderate so heavily against the jury's verdict as to cause a miscarriage of justice.  See United States v. Vernon, 723 F.3d 1234, 1259–60 (11th Cir. 2013).  In accordance with the foregoing, it is

**ORDERED AND ADJUDGED** as follows:

(1) Defendant's Renewed Motion for Judgment of Acquittal [DE 71] is **GRANTED**;

(2) Defendant's Motion for New Trial [DE 70] is **DENIED as moot**;

(3) Defendant's Motion to Strike [DE 76] is **DENIED**; and

(4) The Court will enter judgment accordingly.

       **DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County,

Florida, this 5th day of December, 2013.

JAMES I. COHN
United States District Judge

Copies provided to:
Counsel of record via CM/ECF